IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRENDA L. WILKERSON, | : | C.A.NO. 06-450 (GMS) |
| Plaintiff | : | |
| V | : | |
| WENDOVER, INC. t/b/d/a WENDY'S, a Delaware Corporation | : | |
| Defendant | : | |

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

BROWN, SHIELS & O'BRIEN

BY_____/s/Roy S. Shiels_____
ROY S. SHIELS, ESQUIRE
P.O. DRAWER F
108 E. WATER STREET
DOVER, DELAWARE 19903
ATTORNEY FOR PLAINTIFF
302-734-4766   ID# 346

DATED:  February 26, 2007

# TABLE OF CONTENTS

TABLE OF CITATIONS……………………………………………………………….3

I.  STATEMENT OF THE NATURE AND STAGE OR PROCEEDINGS………………4

II. SUMMARY OF ARGUMENT…………………………………………………………...5

III. STATEMENT OF FACTS…………………………………………………………….6

IV. ARGUMENT

    A.  Standard of Review……………………………………………………………….8

    I.  Plaintiff Wilkerson's Claim is not time barred………………………………..9

    II. Wendy's Motion to Dismiss the claimed violation of the Covenant
        Of Good Faith and Fair Dealings must be denied…………………………….14

V.  CONCLUSION………………………………………………………………………16

TABLE OF CITATIONS

CASES

Archie v Chicago Truck Drivers, Helpers and Warehouse Workers Union,
585 F.2d 210, (7 Cir. 1978)……………………………………………………….   11

Burgh v Borough Council of Montrose, 251 F.3d 465,470 (3 Cir.2001)………………   12

Ebbert v Daimler Chrysler Corporation, 319 F.3d 103 (3 Cir. 2003)…………………..   12

Franks v Bowman Transportation Company, 495 F.2d 398, (5 Cir. 1974)…………….   11

Hornsby v United States Postal Service, 787 F.2d 87, (3 Cir. 1987)……………………   10

Miller v International Paper Co., 408 F.2d 283 (5 Cir., 1969)…………………………..   11

Morse v Lower Merion Sch. Dist., 132 F.2d 902, 906 (3d Cir. 1997)……………………   8,9

Pennsylvania ex. rel. Zimmerman v Pepsico, Inc. 836 F.2d 173, 179 (3d Cir. 1988)……   8

Reed v Agilent Technologies, Inc., 174 F.Supp. 2d 176, (D.C. Del 2001)……………….   14

Sturm v Clark, 835 F.2d 1009 (3d Cir. 1987)…………………………………………….   8

Wisniewski v Johns Manville Corp.,  759 F.2d 271, (3 Cir. 1985)……………………….   8,9

Zipes v Trans World Airlines, Inc., 455 U.S. 385, 393, 71L.Ed 2nd 234, 102 S.Ct.
1127, (1982)……………………………………………………………………………….   9

NATURE AND STAGE OF PROCEEDINGS

On July 26, 2006 Plaintiff Brenda L. Wilkerson (hereafter "Wilkerson") filed a Complaint in this Court alleging that Defendant Wendover, Inc. (hereafter "Wendys") terminated her employment in violation of the terms of Title VII of the Civil Rights Act of 1964 (42 U.S.C. Section 2006(e)-1 et.seq.)  After substituted service on Wendy's, which had been acting as its own Resident Agent before moving its offices out of State, Wendy's requested additional time to respond.  During that additional time period Wendy's filed a Motion to Dismiss, accompanied by its Opening Brief.  This constitutes Wilkerson's Answering Brief in opposition to Wendy's Motion to Dismiss.

## SUMMARY OF ARGUMENT

Wilkerson's Complaint was timely filed after actual receipt of the 90 day "Right to Sue" letter from the Equal Employment Opportunity Commission (EEOC). The EEOC had accepted the determination made earlier by the Delaware Department of Labor (DDOL) to whom it had, by agreement, delegated the receiving and investigating charges of discrimination including Wilkerson. Prior to the sending of the 90 day notice Wilkerson had advised DDOL of her new address, which differed from the address originally given them. Nonetheless EEOC sent its notice to the wrong address, sending it where Wilkerson had not lived for some months. That mail was forwarded to Wilkerson's correct address and received by her at that address on or about May 1, 2006. Her Complaint was filed in this Court within 90 days of her receipt of that notice (in 86 days).

Mailing in error to an incorrect address does not constitute sending notice to an "address of record" and did not "notify" Wilkerson as that term is used in Section 706. Her filing suit within 90 days of proper (and actual) notification meets the statutory requirements.

The State Law claim, based on the Covenant of Good Faith and Fair Dealing (including the context of employment) is not necessarily within the statutory scheme of Title VII, depending on facts not yet adduced, and is within one of the alternative situations permitted by the Delaware Supreme Court. If evidence supports Wilkerson's claim that Wendy's supervisor falsely created or manipulated facts to cause the termination of her employment, as claimed, a separate cause of action could exist. The Motion to Dismiss as to the State Law claim is premature.

## STATEMENT OF FACTS

Wilkerson worked for Wendy's since 1993 (except for a period of time between 1996 and 1998) at its location in Seaford, Delaware. (Plaintiff's Complaint, paragraph 3 (D.I. #1)). Her last position was Acting General Manager.

Wilkerson claims that in or after July 2004, Area Supervisor Paul Moore ("Moore") began frequently visiting the Seaford location because of problems at that location. (Complaint, paragraph 7) In September 2004, while Wilkerson was helping another employee in the office area, she claims that Moore entered the office and placed his hands on Wilkerson's buttocks telling Wilkerson that she had a nice butt. (Complaint, paragraph 9) On another occasion, approximately one week later, she claims Moore placed his hand on his groin, shaking it and telling Wilkerson that "he was hung heavy and she couldn't handle him." (Complaint, paragraph 11) Wilkerson told him to stop. (Complaint paragraph 11) Allegedly, Moore laughed and slapped her with a piece of cheese. Moore allegedly told Wilkerson that if she went over his head, she would be fired. Wilkerson advised another second level supervisor, Rice, about Moore's behavior. (Complaint, paragraph 12) Rice reported Moore's behavior to the Director of Operations, David Lovelace who indicated that he would look into the issue once he returned from vacation. Wilkerson never heard from Lovelace prior to her termination. Wilkerson also claims that Moore made derogatory comments about Wilkerson's fiancé, stating that she was "going home to get some" and that Moore offered to take her home. (Complaint, paragraph 14)

Wilkerson alleges that, on October 2, 2004, Moore called Wilkerson into the office and told her that he was aware that she had reported him for sexual harassment, told her "you f------ bitch you're no manager" and then terminated her. (Complaint, paragraph 15) Wilkerson began to leave the office but Moore grabbed her arm, pushed her against the office printer and told her to "get the f--- out of here". (Complaint, paragraph 16)

Wilkerson filed a charge of sexual harassment with the Delaware Department of Labor. (DDOL) (Complaint, paragraph 17) who, pursuant to an agreement, acted on behalf of the

6

Equal Employment Opportunity Commission ("EEOC"). The EEOC mailed a "Right to Sue" letter to Wilkerson at 13 Hickman Drive, Laurel, DE 19956 (the address provided to the DDOL initially) on April 20, 2006. (Complaint, Exhibit "A")  Wilkerson alleges that the "Right to Sue" letter was mailed to a wrong address, although the DDOL had been given a current address by her, which was legally ascribed to the EEOC, and Wilkerson did not receive the notice until May 1, 2006. (Complaint paragraph 18) Wilkerson filed her Complaint on July 26, 2006. The circumstances of providing of the proper address (in Milford, Delaware) is set forth in Wilkerson's affidavit, attached to this Answer Brief.

A.  <u>Standard of Review</u>

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. <u>Sturm v Clark,</u> 835 F.2d 1009 (3d Cir. 1987). A complaint may be dismissed for failure to state a claim upon which relief may be granted if the facts pled and reasonable inferences therefrom are legally insufficient to support the relief requested. <u>Morse v Lower Merion Sch. Dist.,</u> 132 F.2d 902, 906 (3d Cir. 1997); <u>Pennsylvania ex. rel. Zimmerman v Pepsico, Inc.</u> 836 F.2d 173, 179 (3d Cir. 1988).

In reviewing a motion to dismiss, all allegations in the Complaint and all reasonable inferences that can be drawn therefrom are accepted as true and viewed in the light most favorable to the nonmoving party. <u>Morse,</u> 132 F.3d at 906; <u>Wisniewski v Johns-Manville Corp.,</u> 759 F.2d 271 (3d Cir. 1985).

## I. PLAINTIFF WILKERSON'S CLAIM IS NOT TIME BARRED

Wendy's essentially makes the claim that the requirement of sending that statutory notice required by Section 7064 of the Civil Rights Act of 1964 (42 U.S.C. Section 2000e-1 et. Seq.) is met even when it is sent to the wrong address by virtue of the inadvertent error or mistake of the EEOC or its Agent (DDOL). Indeed, Wendy's argument seems to be that sending the notice to the wrong address, even when the correct address is or should be known to EEOC, (operating through the Delaware Department of Labor (DDOL)) is as fully effective in terms of legal process as is sending notice to the correct address.

Wendy's reaches this conclusion by assuming that (1) the 90 day period for filing suit begins with delivery (i.e. serving process) to an "address of record", and (2) that the address initially supplied when administrative charges are filed becomes the "address of record" and remains such forever more even when the EEOC or its agent is advised that a claimant no longer lives there, and is given the address at which claimant does live, before the 90 day notice is sent. As authority for this strained and unnatural result it cites several cases which involve the sending of notice to the address at which the claimants involved lived but nonetheless claimed they did not immediately receive. Wilkerson contends those cases are inapposite.

Initially, it is clear that the 90 day limitation is not jurisdictional. <u>Zipes v Trans World Airlines, Inc.</u>, 455 U.S. 385, 393, 71L.Ed 2nd 234, 102 S.Ct. 1127, (1982). That means the filing requirements are subject to equitable defenses, including tolling. Further, in deciding this Motion to Dismiss the facts alleged by the non-moving party (i.e. Wilkerson) are taken as true. <u>Morse v Lower Merion School District,</u> 132 F.3d 902, 906, (3 Cir. 1997); <u>Wisniewski v Johns Manville Corp.,</u> 759 F.2d 271, (3 Cir. 1985). Therefore, for the purpose of this Motion, it is clear that Plaintiff provided EEOC with her correct address before the 90 day notice was sent, and it was EEOC's error which caused the notice to be sent to an address at which Wilkerson no longer lived. For further detail, see Affidavit attached. If this set of facts should later be contested that contest would be decided by the fact finder, Judge or jury, based on

factual evidence presented in open Court, not by summary judgment or motion to dismiss.

As other Courts have noted, the notice sent to claimants advising them of their right to sue specifically says the 90 days begin when the claimant receives the notice. See Hornsby v United States Postal Service, 787 F.2d 87, (3 Cir. 1987). This represents EEOC's view of the meaning of the phrase "shall so notify" as it is used in 42 U.S.C. Section 200e-5(f). As was noted in Hornsby v United States Postal Service, supra. the statutory language refers to notice, not to service or filing. That Court also noted it made little sense to condition commencing the running of a statute of limitations upon the happening of an event about which the holder of a cause of action had no knowledge. In reversing the District Court, which had held the time limitation in that case began when the postal service attempted delivery of a certified letter, the Court said that the statutory notice requirement applicable had not been met. It distinguished the facts before it from other fact situations, such as delivery to an address from which a complainant had moved without notice of a change in address or delivery of adequate notice to a correct address, which was retained for some period by a member of the complainant's household. The later circumstance is the fact pattern of the cases here relied on by Wendy's. This case, like the Hornsby case, is factually distinguishable and, like Hornsby, the employer seeks to condition the commencement of the statutory period on something over which Wilkerson had no control (i.e. the error of DDOL acting for the EEOC) or knowledge. This Court, like the Court in Hornsby, should decline to permit employer to do so.

While not all Circuits have directly decided whether the notice requirement of Section 706 relates to when the notice is actually received several Circuits have so decided. See Archie v Chicago Truck Drivers, Helpers and Warehouse Workers Union, 585 F.2d 210, (7 Cir. 1978); Franks v Bowman Transportation Company, 495 F.2d 398, (5 Cir. 1974). In Franks, supra the notice was received at the address supplied by Franks by complainant's nine year old nephew, who subsequently lost it. The Court held that the word "notify" in Section 706 was key and that notification occurred only when notice was sent and received, Miller v International Paper Co., 408 F.2d 283 (5 Cir., 1969). The Court determined the Complainant

10

did not actually receive the notice and under the circumstances there was also no constructive receipt of the notice by him and the applicable date for receipt was a later date when Franks contacted EEOC (nearly a year later). In <u>Archie</u> the notice was received at the correct address of Archie by his wife, and the employer argued she was a person of suitable age and discretion and the date of her receipt (seen as constructive receipt by Archie) rather than Archie's actual receipt, should commence the statutory period for filing. The Court held that the congressional intent of notice was not served until the claimant was actually aware of the suit letter.

The claim of actual notice as the operative factor in commencing the limitation period is clearly even stronger in this case, there being no basis for a "constructive" delivery and no fault on the part of complainant such as failure to supply the changed address. It was, in fact supplied and the actual issue is actually determining what result should follow when an administrative error is made by the EEOC or its agent, DDOL. In light of the clear legislative intent that a complainant receive notice of the end of the administrative resolution efforts there is no basis, under the facts of this case, to impose on Wilkerson a penalty by inferring notice to her by construing "delivery" to mean delivery to an address that was once an "address of record".

Interestingly enough, while Wendy's seeks to rely on the phrase "address of record" as a substitute for logic or fairness it never defines that term or points out any case law defining the term. Nor does Wendy's refer to any case law, in the Third Circuit or elsewhere, involving delivery to the wrong address after notice of moving. There is, however, a Third Circuit case involving that issue. That case, Wilkerson believes, would be helpful to the Court in resolving Wendy's motion in this case. That case is <u>Ebbert v Daimler Chrysler Corporation,</u> 319 F.3d 103 (3 Cir. 2003). In <u>Ebbert</u> complainant indicated she had told the EEOC of her new address. A notice (or perhaps notices) was sent to the wrong address before a notice was ultimately sent to the correct address after Ebbert called EEOC about a status update and learned of the mailing to the wrong address. The District Court found that for Summary Judgment purposes

there had been no notice letter received before the mailing to the correct address, but determined that Ebert had other (oral) notice.  The EEOC itself, as amicus in the case, argued its regulations made actual receipt of the notice the legal standard and their regulation was entitled to judicial deference.

The Court found the regulation cited was a directive to EEOC staff rather than directed to the Courts or complainants and refused to give it the level of deference the EEOC sought. Indeed, the Court felt while the regulations contemplated actual receipt of written notice it did not require same, and further felt the EEOC regulations could not control court procedures. The Court noted it agreed that ordinarily "giving" notice should be construed to mean that a dismissal letter could be deemed to have been received if sent to the correct address but held that in the case before it oral notice would be sufficient if it contained the same information.

The Court cited with approval the case of Burgh v Borough Council of Montrose, 251 F.3d 465,470 (3 Cir.2001) for the proposition that "the onset of the 90 day period is generally considered to be the date on which the complainant receives the right-to-sue letter".  The right to sue letter was seen as exhaustion of any administrative remedy.

The Court held, however, the oral notice involved (no oral notice is involved here) was not sufficiently detailed.  It was not sufficiently detailed because it did not advise when the 90 day period began, thus omitting the "start date" from the information orally received by Ebbert before the written notice was actually received by her.  Thus the written notice actually received became the operative notice, meaning that Ebbert's filing was deemed timely.  In this case there is no claim of, or evidence of, actual oral notice before the actual receipt of the written notice on May 1, 2006.  Actual receipt of written notice constituting the operative date for commencement of the ninety day period is therefore consistent with the holding in Ebbert, as well as Hornsby.  The issue here is not whether Wilkerson could have overcome the administrative error of the EEOC (acting through DDOL) but whether EEOC's delivery of notice to a wrong address, when it knew the correct address but made a mistake, constitutes the delivery of notice contemplated by Congress when it enacted Section 706.  The kind of

12

constructive notice envisioned by Wendy's has been rejected by the Courts under facts similar to the facts of this case which is why Wendy's never cites a case involving delivery to the wrong address. The prior holding in this Circuit, in <u>Ebbert</u> and <u>Hornsby</u> make it clear that Wendy's Motion must be denied.

13

## II. WENDY'S MOTION TO DISMISS THE CLAIMED VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALINGS MUST BE DENIED

The first basis of Wendy's Motion regarding the covenant of Good Faith and Fair Dealing (the "State Law Claim") is based on the ability of Wilkerson to file a claim under Title VII. Two District Court cases are cited in support of this position. Those cases lay out the four scenarios which the Delaware Supreme Court has held may, alternatively, establish a breach of the covenant of Good Faith and Fair Dealing in the context of an employment claim. Clearly Wilkerson's claim is that Moore, her manager, made up or manipulated false claims about her performance in order to get the approval of higher levels of management to support his desire to terminate her employment.

This is demonstrated by the notice sent to Wilkerson, attached as Exhibit "B", by DDOL and subsequently adopted by the EEOC when it sent its notice (attached to the Complaint as Exhibit "A"). That notice reflects a claim that the determination to terminate employment was alleged by Wendy's to be based on claimed performance deficiencies. In short plaintiff claims, and should have an opportunity to prove, that Moore not only relayed false information about her work performance to Wendy's higher management in order to get higher levels of management to terminate Wilkerson, he knowingly made up or manipulated that information to effectuate that desired result. If evidence supports that claim, and discovery has not yet occurred, then a breach of the covenant of Good Faith and Fair Dealing will have been established. Reed v Agilent Technologies, Inc., 174 F.Supp. 2d 176, (D.C. Del 2001).

Title VII, of course, does not extend to the creating or manipulating of false information to cause an employee's termination if there is no adverse employment action based on the various "suspect" categories. In this case Wilkerson has alleged in her Title VII Count that the actions of Wendy's show gender discrimination based on a hostile work environment created by the statements and actions of Supervisor Moore. It is not impossible for a Court, after evidence is adduced through discovery, and perhaps trial, that the employment status was

ended based on falsified or manipulated evidence based on motivation other than sexual discrimination. In that event the claimed "other remedial scheme" would not exist.

    Accordingly, Wilkerson claims Wendy's Motion to Dismiss the count alleging a breach of the Covenant of Good Faith and Fair Dealing is premature. To the extent the Court may determine any greater specificity in the pleading of that claim is required, in terms of creating or manipulating facts, Wilkerson asks leave to do so.

## CONCLUSION

Based on the reasons mentioned above this Court should deny Wendy's Motion to Dismiss.

Respectfully Submitted

BROWN, SHIELS & O'BRIEN

BY_____/s/ Roy S. Shiels_____
ROY S. SHIELS, ESQUIRE
P.O. DRAWER F
108 E. WATER STREET
DOVER, DELAWARE 19903
ATTORNEY FOR PLAINTIFF
302-734-4766   ID# 346

DATED:  February 26, 2007

Brenda L.
DE
Notary Public